IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
AUG 10 2023
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**CHARLES ALGERNON BOOMER, III,**

Petitioner,

v.

**CRIMINAL ACTION NO. 2:19-cr-191**
**CIVIL ACTION NO. 2:22-cv-359**

**UNITED STATES OF AMERICA,**

Respondent.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Charles Algernon Boomer, III's ("Petitioner") Second *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. Pet'r's Second Mot. Vacate, ECF No. 91 ("Pet'r's Second Mot."). The Government opposed the Motion and Petitioner replied. Resp't's Mem. Opp'n to Pet'r's Second Mot. Vacate, ECF No. 100 ("Mem. Opp'n"); Resp't's Am. Mem. Opp'n to Pet'r's Second Mot. Vacate, ECF No. 101 ("Am. Mem. Opp'n"); Pet'r's Reply to Resp't's Mem. Opp'n to Pet'r's Second Mot. Vacate, ECF No. 105 ("Pet'r's Reply"). On July 13, 2023, the Court held a hearing on this matter. The matter is now ripe for judicial determination. For the reasons set forth below, Petitioner's Motion is **DENIED**.

**I. FACTUAL AND PROCEDURAL HISTORY**

On September 13, 2019, Petitioner was named in a Criminal Complaint. ECF No. 1. On September 16, 2019, Petitioner was arrested, and made an initial appearance. ECF Nos. 5, 6. The Court appointed Diane Pearl Toscano, Esq., to represent Petitioner, and she did so throughout the federal proceeding. On September 19, 2019, Petitioner waived his right to a preliminary hearing and was ordered detained pending trial. ECF No. 9.

The Indictment filed on December 18, 2019, charged Petitioner with the following:

1

- Count One: Conspiring To Manufacture, Distribute, And Possess With Intent To Distribute Five Kilograms Or More Of Cocaine And 280 Grams Or More Of Crack Cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A);

- Counts Two-Four and Eight-Twelve: Distributing And Possessing With Intent To Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)((B), (C), and (D);

- Counts Five and Thirteen: Maintaining A Drug Premises, in violation of 21 U.S.C. § 856(a)(1) and (b);

- Count Six: Possessing A Firearm In Furtherance Of A Drug-Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A); and

- Counts Seven and Fourteen: felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). ECF No. 19.

The next day, Petitioner filed a motion to inquire whether new counsel should be appointed. ECF No. 22. After holding a hearing on the matter, the Court denied the motion to appoint new counsel. ECF Nos. 25, 26.

On February 28, 2020, Petitioner appeared before U.S. Magistrate Judge Lawrence Leonard and pled guilty under a plea agreement to Counts One and Two of the Indictment. ECF Nos. 38, 39. On July 2, 2020, the Court imposed a 192-month sentence on Counts One and Two to be served concurrently. ECF Nos. 51, 53. The Court entered judgment on July 6, 2020. ECF No. 53. Petitioner did not notice an appeal.

On June 7, 2021, Petitioner filed his initial § 2255 motion and memorandum. ECF No. 79. He raised two ineffective assistance of counsel claims and a direct challenge to his sentence. *Id.* Two weeks later, the Court denied the § 2255 motion without prejudice because he had "not

exhausted his alternative remedies to file a direct appeal to the United States Court of Appeals for the Fourth Circuit." ECF No. 81.

On February 3, 2022, Petitioner submitted a motion "for relief from [the] exhaust[ion] remedy [requirement]" and for an extension of time to file a § 2255 motion "based on the facts that this pandemic has limit[ed] [him] to resources that would been easier to access if the pandemic didn't exist," as well as "not knowing [any]thing about a deadline." ECF No. 85. Two weeks later, the Court denied the request. ECF No. 86.

On July 8, 2022, Petitioner filed a *pro se* Motion to Restore Rights. ECF No. 89. On July 22, 2022, this Court entered an order holding the motion in abeyance, declining to rule on the merits until Petitioner advised the Court within 30 days whether he agreed to or opposed recharacterization of the motion as a § 2255 motion. ECF No. 90. On August 26, 2022, Petitioner filed the instant § 2255 motion and memorandum. Pet'r's Second Mot. On March 21, 2023, the Court ordered an evidentiary hearing in the interest of justice. ECF No. 107. On July 13, 2023, the Court held a hearing on the facts and circumstances of Petitioner's allegation that counsel failed to file an appeal after Petitioner requested to file an appeal. The Court found it appropriate to revisit the question of whether Petitioner timely filed his initial 2255 and whether he was required to seek an administrative remedy he did not have available to him. *Id.* at 5. In its initial ruling, the Court erroneously relied on *Timms v. Johns*, 627 F.3d 525 (4th Cir. 2010) (holding that petitioner should have exhausted his alternative remedies in commitment action before availing himself of habeas review). However, Petitioner did not fail to exhaust admirative remedies as the nature of his request could not have been addressed through a direct appeal.

## II.  LEGAL STANDARD

### A. Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255. In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Additionally, *pro se* filers are entitled to more liberal construction of their pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a § 2255 Motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999).

However, an individual may raise a procedurally defaulted claim if he or she can show (1) "cause and actual prejudice resulting from the errors of which he complains" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. . . . [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–93. To demonstrate cause and prejudice, a petitioner must show the errors "worked to [his or her] actual and substantial disadvantage, infecting [his or her] entire trial with error of

4

constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal and constitute sufficient cause to review a procedurally defaulted claim. *See Untied States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493.

### B. Ineffective Assistance of Counsel

A viable ineffective assistance of counsel claim arises when "the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). An ineffective assistance of counsel claim is properly raised on a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance. *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992). To prove a claim of ineffective assistance of counsel, a petitioner must make two showings.

First, a petitioner must show that counsel's performance was deficient. *Id.* at 687. Counsel's errors must have been so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment. *Id.* To demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That presumption is even greater when counsel's decisions represent strategic tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). A petitioner bears the burden of rebutting this presumption. *Strickland*, 466 U.S. at 689.

Second, a petitioner must show that the deficient performance prejudiced the defense. *Id.* at 687. In other words, counsel's errors must have been so serious that the petitioner was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In short, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If a petitioner cannot meet either component of the *Strickland* test, the ineffective-assistance claim will fail. *Id.* at 700. The Court need not address both components of the test if petitioner makes an insufficient showing on one prong. *Id.* at 697.

### III. DISCUSSION

Petitioner raises four issues. First, Petitioner claims ineffective assistance of counsel for failure to pursue a direct appeal. Pet'r's Second Mot. at 4. Second, Petitioner claims ineffective assistance of counsel as Petitioner felt coerced by counsel to plead guilty. *Id.* at 5. Third, Petitioner claims ineffective assistance of counsel as Petitioner argues that he was not able to make an informed and conscious choice regarding his plea. *Id.* at 7. Finally, Petitioner claims that the Court committed plain error when it added a three-point enhancement to his base offense level pursuant to U.S.S.G. § 2K2.1(b)(1)(B) and (b)(4)(A). *Id.* at 8. The Court will address each in turn.

#### A. Ineffective Assistance of Counsel- Trial Counsel Failed to Appeal

First, the Court addresses Petitioner's claim regarding ineffective assistance of counsel for failure to pursue a direct appeal. "[A]n attorney renders constitutionally ineffective assistance of counsel if he fails to follow his client's unequivocal instruction to file a timely notice of appeal

even though the defendant may have waived his right to challenge his conviction and sentence in the plea agreement." *United States v. Poindexter*, 492 F.3d 263, 265 (4th Cir. 2007). "[A]n attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests." *Id.* at 273. Petitioner has the burden of demonstrating that he provided unequivocal instructions to his attorney to file a timely notice of appeal. *Id.* at 265, 273.

Here, Petitioner stated that "when my case was over 7/2/20 I told [trial counsel] immediately that I wanted to appeal an[d] on what grounds and why. She came to see me in 'WTRJ' and said that she would file [within] the 14th day[,] never doing so." At the hearing, Petitioner testified that "And then the letter said I had 14 days to appeal or something like that. And I talked to her on the 15th. I didn't know how to appeal. I didn't know how to do it. I asked her to appeal it on these, on these situations that I had brought up today. But she said she was going to take care of it." Evidentiary Hr'g Tr. at 31:14-19. Petitioner testified that "I didn't have no choice but to believe, ... she was going to do it." *Id.* at 31:20-23; 42:8-10. Lastly, Petitioner stated that he never agreed to cooperate with the government. *Id.* at 32:19-25; 41: 2-9.

However, as a part of his plea, Petitioner signed a Cooperation Agreement. ECF No. 40. Further, Petitioner's trial counsel, in an affidavit to the Court, states that Petitioner's claim "is patently false." ECF No. 100-2 at 3. Trial counsel explains that she advised Petitioner about his right to appeal and that he was waiving his right to appeal when Petitioner signed his plea agreement." *Id.* at 2. Further trial counsel states that a "big part of [Petitioner]'s decision to plead guilty – once the gun charges were dropped – was his desire to cooperate and receive a Rule 35." *Id.* In pursuance of this motion, immediately after sentencing Petitioner asked how to get a Rule 35 Motion filed quickly. *Id.* Moreover, trial counsel visited Petitioner on July 15, 2020, at the

Western Tidewater Regional Jail and Petitioner did not tell counsel to note his appeal during that meeting. *Id.* at 3. During this meeting, trial counsel delivered a letter which included the time frame to note his appeal. *See* Exhibit A.

At the evidentiary hearing, Petitioner's trial counsel consistently testified that Petitioner never discussed wanting to file an appeal. Evidentiary Hr'g Tr. at 67:21-24. In fact, trial counsel testified that the focus on post-sentencing conversations "was on trying to get him into grand jury as quickly as possible so he would get the most credit for a Rule 35. And he, of course, wanted to do everything he could to cooperate without having to do it in front of a jury if that was possible." *Id.* at 68:3-7.

Petitioner did not meet his burden of demonstrating that he provided unequivocal instructions to his attorney to file a timely notice of appeal. Petitioner's statements under oath at the evidentiary hearing contradict the record in this case. Specifically, the Cooperation Agreement the Plaintiff signed as a part of his written Plea Agreement. ECF No. 40. According to the record and the credible testimony from trial counsel, Petitioner actively inquired about cooperating with the Government in pursuit of a Rule 35 and Petitioner never asked trial counsel to appeal. Therefore, Petitioner provided no credible evidence in the pleadings or at the evidentiary hearing to sustain his burden that he provided unequivocal instructions to his attorney to file a timely notice of appeal. Petitioner's claim that trial counsel failed to file a direct appeal after being instructed to fails under the first prong of the *Strickland* test as Petitioner has not shown that counsel's performance was deficient.

### B. Ineffective Assistance of Counsel- Trial Counsel Coerced Petitioner to Plead

Next, the Court turns to whether trial counsel coerced petitioner to plead guilty. The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has explained that absent

"extraordinary circumstances ... allegations in a § 2255 motion that directly contradict the defendant's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false,'" such that "a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005) (internal citations omitted).

Here, Petitioner argues that trial counsel "coerced him into pleading guilty, without the benefit of a written plea agreement, to conceal [her] unpreparedness for trial."[1] Pet'r's Second Mot. at 5. He further argues that trial counsel "induced [him] to plead guilty based on patently erroneous and incorrect advice." *Id.* However, at the plea hearing Petitioner pled guilty because he was guilty of the offenses, not because of any promise of leniency outside the plea agreement or because anyone forced him to plead guilty. Plea Hr'g Tr., ECF No. 98 at 16–17. Petitioner also stated under oath that he had sufficient time to consider his decision to plead guilty and still wanted to proceed. *Id.* at 22. Further, during the evidentiary hearing, trial counsel testified under oath that Petitioner had been very involved during plea negations. Evidentiary Hr'g Tr., at 62:22-25. Trial Counsel testified that she spoke with Petitioner "regularly about his discovery and what his expectations were in the plea. He was very clear from the beginning that he would take responsibility for part of it." *Id.* at 63:2-6.

Petitioner provides no evidence in his pleadings or at the evidentiary hearing showing that he was coerced into taking a plea. Therefore, Petitioner's claim that trial counsel coerced him into pleading guilty holds no merit. Petitioner's claim that trial counsel coerced Petitioner to plead guilty fails under the first prong of the *Strickland* test as Petitioner has not shown that counsel's

---

[1] The Court notes that Petitioner indeed pled guilty pursuant to a written plea agreement. *See* Plea Agreement, ECF No. 39.

9

performance was deficient.

### C. Petitioner's Plea Was Voluntary, Knowing, Or Intelligent

Similar to the claim above, Petitioner argues that his plea was not voluntary, knowing, or intelligent as he did not understand the consequences of an "open" plea agreement with the information provided to him by trial counsel. Pet'r's Second Mot. at 7. Petitioner concedes that the Court properly conducted the Rule 11 colloquy. *Id.* at 12. However, Petitioner still contends that his plea was not voluntary, knowing, or intelligent because he was not aware of the consequences of accepting an open plea agreement. *Id.* at 13.

Here, Petitioner offers nothing to contradict that his plea was voluntary, knowing, and intelligent. Petitioner did not enter an "open" plea agreement. He pled guilty pursuant to a written plea agreement. Plea Agreement, ECF No. 39. At the evidentiary hearing, Petitioner testified that trial counsel had him sign the plea agreement and accompanying documents right before the plea hearing started. Evidentiary Hr'g Tr. at 54:1-24; 55:11-19.

The record shows that Petitioner was aware of the consequences of his plea agreement. The Court stated at the plea hearing the maximum penalty provided by law for each count and the fact each count carried a mandatory minimum. Plea Hr'g Tr., at 7-9. Further, Petitioner acknowledged that "it's impossible for either the Court or [his] lawyer to know precisely what the sentence range will be provided by the guidelines" and that trial counsel could not "be specific as to the guidelines which will apply in [his] case" because the presentence report still needed to be prepared. *Id.* at 19–20. Moreover, the Court advised Petitioner the rights he would be giving up by pleading guilty to a felony conviction and the various rights he would have if he went to trial. *Id.* at 9; 14-15. Therefore, there is no evidence in the record and Petitioner has not provided any evidence to show that he was not aware of the consequences of taking a plea. The Court finds that this claim holds

no merit.

### D. Enhancement Pursuant to U.S.S.G. § 2K2.1(b)(1)(B) Constituted Plain Error

Lastly, Petitioner argues that the Court committed plain error when the PSR attributed him with a three-point enhancement pursuant to U.S.S.G. § 2K2.1. Pet'r's Second Mot. at 8. The Court did not apply § 2K2.1 at his sentencing. His guidelines were instead calculated under § 2D1.1, which is the provision governing drug-trafficking crimes. *See* PSR ¶¶ 29–39. Therefore, the Court finds that this claim has no merit.

### IV. CONCLUSION

For the reasons stated above, Petitioner's Second § 2255 Motion, ECF No. 91, is **DENIED**. Moreover, Petitioner's Motion to Restore Rights is **MOOT**. ECF No. 89.

This Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. Proc. 22(b)(1). This means that Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017). Petitioner's claims are based upon incorrect interpretations of statutory provisions and judicial precedent. As such, Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, and a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that he may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date.

The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
August 10, 2023

/s/
Raymond A. Jackson
United States District Judge